UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTINE ANN HOHENSTEIN,

        Plaintiff,

v.                                                  Case No. 18-cv-1943-pp

COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

        Defendant.

**ORDER DENYING DEFENDANT'S MOTION TO ALTER JUDGMENT
(DKT. NO. 42)**

On March 4, 2021, the court reversed the decision of the Commissioner and remanded the plaintiff's claim to the ALJ. Dkt. No. 39. Specifically, the court ordered the ALJ to "reconsider the residual functional capacity as to the limitations on concentration, persistence and pace with regard to the plaintiff's depression and PTSD and not to discount Dr. Trippe's opinion based solely on the plaintiff's activities of daily living" and to "conclude[1] in the hypothetical to the vocational expert Dr. Trippe's opinion that the limitations on CPP were severe because of the plaintiff's depression and PTSD." Id. at 2. On March 31, 2021, the defendant filed a motion to alter the judgment. Dkt. No. 42.

**I.    Standard**

The defendant filed her motion under Federal Rule of Civil Procedure 59(e); that rule allows a party to file a motion to "alter or amend a judgment" within twenty-eight days of the date the judgment is entered. To prevail on a Rule 59(e) motion, a party must clearly establish "(1) that the court committed

---

[1] This is a typographical error; the court meant to say "include," not "conclude."

1

a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 954 (7th Cir. 2013) (quoting Blue v. Hartford Life & Accident Ins. Co., 698 F.3d 587, 598 (7th Cir. 2012)). A "manifest error" is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

**II. Analysis**

The defendant timely filed her motion and argues that the court committed two clear errors of law. Dkt. No. 42 at 1. The defendant first argues that she did not have the opportunity to challenge the argument that led to the court's decision regarding Dr. Trippe's 2014 opinion. Id. She contends that the court remanded on an issue that the plaintiff did not argue; she says that the court remanded "because the ALJ did not identify substantial evidence conflicting with consultative-examining psychologist Dr. Trippe's November 2014 opinion that the Plaintiff had severe—or apparently more than moderate—difficulties in the functional area of concentration, persistence, or pace," while the plaintiff had framed the issue as "a challenge to whether the RFC adequately incorporated the ALJ's moderate rating in the area of concentration, persistence, and pace." Id. at 3-4. The defendant says that for this reason, the court ordered a remand on an issue that the plaintiff did not clearly argue. Id. at 5-6.

Second, the defendant argues that the court mis-cited and incorrectly applied Hughes v. Astrue, 705 F.3d 276 (7th Cir. 2013)[2] and Craft v. Astrue,

---

[2] The defendant is correct that the court wrongly stated that Hughes had been decided in 2019, when it had been decided in 2013.

2

539 F.3d 668 (7th Cir. 2008), id. at 8, and incorrectly concluded that the plaintiff's activities could not constitute substantial evidence supporting the ALJ's assessment of Dr. Trippe's opinion, id. at 10.

As to the defendant's first argument regarding her opportunity to challenge the plaintiff's argument, the court disagrees.

In its oral ruling, the court acknowledged that the plaintiff's arguments as presented in the briefs were not clear. Dkt. No. 38. The court perceived that this section of the plaintiff's brief included two arguments: (1) that the RFC did not adequately reflect the plaintiff's moderate limitations in concentration, persistence and pace, and (2) that the ALJ erred in relying heavily on the plaintiff's reported activities of daily living. Id. As to the latter, the court analyzed the plaintiff's arguments involving her daily activities and concluded that the ALJ had failed to properly examine *how* the plaintiff performed the relevant daily activities. Id. (citing Craft v. Astrue, 539 F.3d 668, 680 (7th Cir. 2008)). The court found that it was "unclear how the ALJ can conclude that [the plaintiff] is able to focus her attention on these activities while citing pages of the record that fail to demonstrate such focus." Id. The court took issue with the lack of evidence supporting the ALJ's finding that the plaintiff was able to focus for long periods. Id. The court then compared the plaintiff's stated limitations with the second hypothetical posed to the VE, which focused on an individual who needed breaks "approximately every half hour" and time off-task. Id. In such a case, the VE had stated that the person would not be able to find other jobs in the national economy which she could perform. Id. (citing dkt. no. 26-3 at 57-58). The court determined that "[t]he ALJ improperly ignored evidence that the plaintiff would need similar, if not even more frequent breaks," meaning that the ALJ's decision at steps four and five lacked

3

substantial evidence. Id. The logical bridge was incomplete where the RFC failed to recognize the plaintiff's limitations in focus. Id. That was why the court remanded on this issue, ordering the ALJ to "reassess the plaintiff's CPP limitations, incorporating whether the plaintiff is capable of working without consistent breaks." Id.

The plaintiff's opening brief contained several paragraphs of arguments attempting to undermine the ALJ's conclusions about the plaintiff's CPP limitation and the way her daily activities were considered in the ALJ's assessment. See dkt. no. 27 at 21-22. The plaintiff disagreed with the defendant's proposition that the evidence did not support any limitations to her CPP, arguing that her limitations were present whether she was in a social setting or was alone. Id. at 21. She argued that the activities upon which the ALJ were "self paced, and infrequent," not comparable to the kind of activities she would have to do in a full-time work setting. Id. She argued that the ALJ did not cite to any state agency opinions that showed the plaintiff could maintain concentration, persistence and pace. Id. at 22. The plaintiff could have been clearer, as the court stated during the oral ruling—she could have said, "The ALJ's decision regarding the plaintiff's concentration, persistence and pace was not supported by substantial evidence," or "the ALJ did not identify any substantial evidence that conflicted with Dr. Trippe's opinion as to the severity of the plaintiff's limitations in concentration, persistence and pace," or "the ALJ relied too heavily on only one part of Dr. Trippe's opinion— that the plaintiff could focus in an hour-long interview—without addressing the other parts of the opinion." But the fact that the defendant did not read the arguments that way does not constitute manifest error.

4

In her motion to alter the judgment, the defendant indicates that she stated during the hearing that she believed that the plaintiff had not challenged the reasonableness of the ALJ's weighing of Trippe's opinion. Dkt. No. 42 at 4. She says that the plaintiff had plenty of opportunities to correct that misimpression but did not do so, id., and that the plaintiff's brief did not link the ALJ's evaluation of the plaintiff's activities of daily living to the ALJ's evaluation of Trippe's opinion, id. at 5. But in her opening brief, the plaintiff criticized the ALJ's reliance on a single statement in Trippe's consultative evaluation—that the plaintiff had no significant difficulty maintaining focus during an hour-long interview—saying that there "would be problems with this argument." Dkt. No. 27 at 22. The plaintiff criticized the fact that the ALJ found only moderate limitations based on that sentence, even though Trippe's consultative evaluation concluded that the plaintiff had a severe limitation in concentration, persistence and pace based on her PTSD and depression. Id. The plaintiff pointed out that Trippe's was the only examining opinion in the record and that it was consistent with the plaintiff's self-reported symptoms. Id. And the footnote the plaintiff dropped discussing the ALJ's description of her activities of daily living was at the end of a sentence criticizing the ALJ's conclusion (drawn from the one line in Trippe's CE) that the plaintiff's CPP limitations were only moderate. Id. at 21 n.3.

The defendant misapprehends the court's conclusion. The court did not conclude that the ALJ erred in considering the plaintiff's activities of daily living, or that an ALJ is not allowed to consider activities of daily living. Rather, it determined that the error arose from the way the ALJ used that information to draw conclusions that were not supported by other parts of Trippe's opinion and that were not supported by the activities themselves. The ALJ cited

5

portions of documents citing the plaintiff's performance of activities while omitting information in the same documents as to *how* she performed those activities. See Craft, 539 F.3d at 680 (finding that the ALJ ignored the plaintiff's qualifications as to how he carried out activities, and that those qualifications should be considered in the RFC). In considering the plaintiff's concentration, persistence and pace, the ALJ stated that the plaintiff "reported she was able to prepare meals, drive a car, shop in stores, use online banking, manage personal finances, read and crotchet. . . . These are activities that suggest the claimant retains an ability to focus attention and stay on task." Dkt. No. 1-2 at 10 (internal citation omitted).

As the court previously discussed, the plaintiff stated that she could cook, but that cooking was comprised of cereal, frozen dinners and peanut butter and jelly sandwiches. Dkt. No. 38 (citing dkt. no. 26-7 at 16, 32). She also needed to take breaks throughout, meaning it took her anywhere from an hour to two hours to cook simple meals. Dkt. No. 26-7 at 16, 62. She faced similar challenges when loading and unloading the dishwasher and grocery shopping, and she was unable to perform outdoor chores. Id. at 16, 32-33. Her ability to drive was inconsistent due to her back pain, requiring her to rely at times on her daughter or husband for transportation. Id. at 33. As the court noted during the hearing, these activities did not demonstrate an ability to sustain focus or to concentrate; the ALJ's reliance on them (as well as the one line from Trippe's evaluation about concentrating during an hour-long interview) in the face of a consultative evaluation that concluded the plaintiff had severe limitations in CPP as a result of PTSD and depression, was not supported by substantial evidence.

6

There was no logical bridge between the way the plaintiff performed activities of daily living and the ALJ's conclusion that those activities showed that she suffered from only moderate limitations in concentration, persistence and pace.

As to the defendant's second argument, the court has addressed it. The defendant perceived that the court had concluded that an ALJ could not take into account activities of daily living in assessing and weighing a doctor's opinions. Dkt. No. 42 at 9. That is not what the court believed, or what it concluded. The defendant points to certain activities that did require more concentration and focus, such as the fact that the plaintiff babysat and set up a craft-selling business. Id. at 10. The court does not deny that the plaintiff described such activities. But the ALJ relied on other activities without considering or addressing the fact that those activities took much longer to complete and did not necessarily require sustained focus. The court is aware, and was at the time it issued its decision, that an ALJ may take into account activities of daily living when assessing and weighing a plaintiff's claims, or weighing a doctor's opinion. Again, the court took issue with the fact that the ALJ did not appear to consider the effort and time it took the plaintiff to perform those activities.

The court agrees that it wrongly stated the year in which the Hughes decision came out. It came out before Dr. Trippe's report. The court agrees that both Hughes and Craft cautioned against treating the ability to do household chores as demonstrating a plaintiff's ability to hold full-time employment, and it agrees that some of the activities the plaintiff described—like babysitting, traveling or setting up a craft business—were not routine household chores. These facts do not change the court's conclusions.

7

### III. Conclusion

The court **DENIES** the defendant's motion to alter judgment. Dkt. No. 42.

Dated in Milwaukee, Wisconsin this 20th day of May, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**